IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRETT STACY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-446-M-BN |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States Chief District Judge Barbara M.G. Lynn. *See* Dkt. No. 4.

Defendant JPMorgan Chase Bank, N.A. has filed a motion to dismiss. *See* Dkt. No. 5 (Motion to Dismiss Under Rule 12(b)(6)). Plaintiff Brett Stacy has filed a response, *see* Dkt. No. 15, and JPMC has filed a reply, *see* Dkt. No. 16.

For the following reasons, the undersigned recommends that the motion to dismiss should be denied.

**Background**

Plaintiff purchased property located at 3209 Cornell Avenue in Dallas, Texas, on October 11, 2007. *See* Dkt. No. 1-1 at 26-27 (General Warranty Deed with Vendor's Lien). To finance the purchase, Plaintiff executed two notes, secured by two separate deeds of trust, both payable to Washington Mutual Bank, F. A. The first note was in the

amount of $1,320,000 and was secured by a deed of trust. *See id.* at 28-32, 33-47. The second note was in the amount of $165,000 and was secured by a second deed of trust. Plaintiff borrowed a total amount of $1,485,000 to finance his purchase of the property.

Both loans were transferred to JPMC, which obtained rights as the mortgagee on Plaintiff's first and second mortgages.

Plaintiff fell behind on his first mortgage in April 2018. Plaintiff cured the default on June 25, 2018.

Shortly thereafter, Plaintiff fell behind on his first mortgage again, and he contacted JPMC for mortgage assistance.

In October 2018, Plaintiff received a Request for Mortgage Assistance form ("loss mitigation application"). Plaintiff filled out the form and had his accountant prepare a profit and loss statement for the entire year. Plaintiff returned the completed application to JPMC and was told he would receive a response in thirty days.

On October 29, 2018, JPMC informed Plaintiff that it needed additional information because the application was not signed or dated and the profit and loss statement was not clear and complete. *See id.* at 48-49. JPMC requested that Plaintiff submit a new loss mitigation application and profit and loss statement by November 28, 2018. *See id.* Plaintiff called JPMC to inquire about the letter. He was told that the application was signed, but not dated. He was also told that the profit and loss statement needed to be for the most current three months only, not an entire year. And he was told that he had to reapply and submit a new loss mitigation application and profit and loss statement.

Plaintiff was unable to get another appointment with his accountant to prepare another profit and loss statement due to the holidays and end-of-year tax consulting. In November 2018, Plaintiff contacted JPMC to inquire whether it would provide him with the financial information he had previously submitted to assist him in "refilling out" the loss mitigation application, but JMPC refused to do so.

In December 2018, Plaintiff spoke with several different JPMC customer care representatives regarding mortgage assistance. He was told that, as long as he kept making payments on the second mortgage and working on his mortgage assistance package for the first mortgage, JPMC would not foreclose on the property. Therefore, Plaintiff continued payments on his second mortgage while gathering the necessary information he needed to resubmit another loss mitigation application.

On January 8, 2019, JPMC provided Plaintiff with Notice of Acceleration. The Trustee's Sale was set for February 5, 2019. *See id.* at 50-51 (Notice of Acceleration), 52-53 (Notice of Substitute Trustee Sale).

On January 17, 2019, Plaintiff's mortgage assistance account manager, Albert Omorege, informed Plaintiff that his property was set for foreclosure and that, if Plaintiff wanted to stop the foreclosure, Plaintiff needed to resubmit the loss mitigation application. Plaintiff told Mr. Omorege about the problem that he had with the accountant and that he did not have some of the financial information needed to complete the application, and Mr. Omorege provided Plaintiff with the information that Plaintiff had requested from JPMC in November.

On January 29, 2019, Plaintiff resubmitted a loss mitigation application and

profit and loss statement for the last three months.

On January 31, 2019, Plaintiff filed a Verified Original Petition, Application for Temporary Restraining Order, and Request for Disclosure in County Court at Law No. 3 of Dallas County, Texas. *See id.* at 8-53 (*Brett Stacy v. JPMorgan Chase Bank, N.A.*. No. CC-19-707-C) (the "Petition"). Plaintiff asserts claims for violations of the Real Estate Settlement Procedures Act ("RESPA") and the Texas Debt Collection Act ("TDCA"). Plaintiff also seeks injunctive relief under the TDCA.

JPMC removed the case to this Court on February 21, 2019, *see* Dkt. No. 1-1, and filed its motion to dismiss on February 27, 2019, *see* Dkt. No. 5.

JPMC asserts that Plaintiff has failed to state a claim for violations of the RESPA or the TDCA because both of those claims are founded on allegations that JPMC mailed a notice of foreclosure and did not properly respond to Plaintiff's loss mitigation application. The property has not been foreclosed.

JPMC argues that the Petition fails to state a claim for violation of the RESPA on which relief can be granted because most of those claims are founded on Plaintiff's false, conclusory allegation that he submitted a complete loss mitigation application to JPMC on some unspecified date in October 2018. JPMC further argues that Plaintiff's specific allegations conclusively show that the application was incomplete. JPMC further argues that Plaintiff's remaining RESPA claims fail because nothing in the RESPA requires a servicer to evaluate an incomplete application for loss mitigation options. *See* Dkt. No. 6.

JPMC argues that the Petition fails to state a claim for violation of the TDCA on

which relief can be granted because the sole basis for the TDCA claim is Plaintiff's erroneous contention that JPMC violated a section of the RESPA. *See id.*

JPMC argues that the Petition fails to state a claim on which relief can be granted for injunctive relief because Plaintiff cannot show a likelihood of ultimate success on the merits of either the RESPA or TDCA claims. *See id.*

Plaintiff responds that JPMC violated the RESPA because JPMC was required to review his October 2018 loss mitigation application because it was complete, or, alternatively, it was facially complete as it was missing only the date and was submitted more than 37 days before the scheduled foreclosure.

The undersigned now concludes that, for purposes of a Rule 12(b)(6) motion, Plaintiff has stated plausible claims to relief under both the RESPA and TDCA, and the motion to dismiss should be denied.

**Legal Standards**

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement

to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453

B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

District courts within the Fifth Circuit have divided as to whether a fair-notice standard continues to apply to pleading affirmative defenses or whether *Twombly* and

-8-

*Iqbal*'s plausibility standard applies, and the "Fifth Circuit has not addressed this issue." *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 484 (S.D. Tex. 2012). But, whatever may be the standard for pleading an affirmative defense under Federal Rule of Civil Procedure 8(b) – a question with which the Court is not presently confronted – the *Twombly* and *Iqbal* plausibility standard applies to pleading any "claim for relief" under Rule 8(a)'s requirements – whether as a plaintiff's claim or a defendant's counterclaim. *See* FED. R. CIV. P. 8(a); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 1205 (3d ed. 2013) ("Rule 8(a) applies not only to an original claim contained in a complaint, but also to a pleading containing a claim for relief that takes the form of a counterclaim, cross-claim, or third-party claim."); *see generally Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 576-77 (5th Cir. 1996) (affirming a Rule 12(b)(6) dismissal of a counterclaim).

**Analysis**

I.   Plaintiff's RESPA claims should not be dismissed.

JPMC argues that Plaintiff fails to state a claim for RESPA violations because the statements in his Petition demonstrate that he failed to timely submitted a complete loss application necessary to trigger the claimed duties under the RESPA.

Throughout his Petition, Plaintiff states that he submitted a complete loss mitigation application to JPMC in October 2018. *See* Dkt. No. 1-1 at ¶¶ 15, 27, 31, 35. He also states that he resubmitted a complete loss mitigation application on January 29, 2019. *See id.* at ¶ 20. Alternatively, Plaintiff argues that his October 2018

application was facially complete because, other than his failure to date it, the application included more information than JPMC required. *See id.* at ¶¶ 27, 38.

Plaintiff alleges that JPMC violated 12 C.F.R. § 1024.41(c)(1) by "fail[ing] to evaluate Plaintiff for 'all' loss mitigation options and to provide Plaintiff a written response to the options Plaintiff would be offered, if any," *id.* at ¶¶ 34, 35; that JPMC violated 12 C.F.R. § 1024.41(d) because it "never provided a written notice to Plaintiff that he was denied for a trial or permanent loan modification or any reason for said denial," *id.* at ¶¶ 34, 35; that JPMC violated 12 C.F.R. §1024.41(g) by engaging in dual tracking by scheduling a non-judicial foreclosure sale of the property while simultaneously considering Plaintiff for loss mitigation options, *id.* at ¶¶ 28-31; and that JPMC violated 12 C.F.R. 1024.41(h) by failing to provide him with "the opportunity to appeal the denial of any loss mitigation request," *id.* at ¶ 36.

The duties imposed by Sections 1024.41(c)(1), (d), (g), and (h) are triggered only if a complete loss mitigation application is submitted or received in compliance with the applicable deadline prescribed by regulation. *See Good v. Prof-2013-s-13 Legal Title Trust IV by U.S. Bank Nat'l Assoc.*, No. 3:17-cv-2967-M-BN, 2019 WL 2617948, at *8 (N.D. Tex. May 16, 2019) (citing *Kaprantzas v. CitiMortgage, Inc.*, No. 3:17-cv-780-D, 2018 WL 4852875, at *3 (N.D. Tex. Oct. 5, 2018)). A "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. §

1024.41(b)(1).

Section 1024.41(c)(1) requires a complete loss mitigation application to trigger the servicer's duty to evaluate the application and then provide written notice of its determination:

> [I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:
>
> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
>
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1)(i), (ii).

Section 1024.41(d) requires a complete loss mitigation application to trigger the servicer's duty to send the borrower a notice outlining the reasons for denial:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. § 1024.41(d).

Section 1024.41(g) requires a complete loss mitigation application to trigger the

prohibition on foreclosure sale:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

And 12 C.F.R. § 1024.41(h) requires a complete loss mitigation application to trigger the appeal process:

> If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

12 C.F.R. § 1024.41(h)(1).

Plaintiff also alleges that JPMC violated other sections of the RESPA by failing to exercise reasonable diligence in working out Plaintiff's options and treating Plaintiff's loss mitigation application as facially complete when it was received in October 2108 because the only missing information was the application's date. "A loss mitigation

-12-

application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i)." 20 C.F.R. § 1024.41(c)(2)(iv).

Plaintiff contends that JPMC violated 12 C.F.R. §1024.41(b) by allegedly "failing to exercise reasonable diligence in working out Plaintiff's options and to treat Plaintiff's [October 2018 application] as facially complete when it was sent in October 2018." Dkt. No. 1-1 at ¶ 27. Section 1024.41(b) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

And Plaintiff contends that JPMC violated 12 C.F.R. § 1024.41(c)(2)(i) and (ii) by failing to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application. *See* Dkt. No. 1-1 at ¶ 37.

Section 1024.41(c) provides that

> a servicer shall not evade the requirement to evaluate a complete loss mitigation application for all loss mitigation options available to the borrower by offering a loss mitigation option based upon an evaluation of any information provided by a borrower in connection with an incomplete loss mitigation application.

12 C.F.R. § 1024.41(c)(2)(i). Notwithstanding that provision,

> if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer may, in its discretion,

-13-

> evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option. Any such evaluation and offer is not subject to the requirements of this section and shall not constitute an evaluation of a single complete loss mitigation application for purposes of paragraph (i) of this section.

12 C.F.R. § 1024.41(c)(2)(ii).

Section 1024.41(c)(2)(iv) gives a servicer discretion to consider facially complete loss mitigation applications:

> A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section. If the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it first became facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of this paragraph (c). A servicer that complies with this paragraph (c)(2)(iv) will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B) of this section.

12 C.F.R. § 1024.41(c)(2)(iv).

Taking Plaintiff's factual statements as true, and viewing them in the light most favorable to Plaintiff, only the missing date prevents the October 2018 loss mitigation application from being complete. Despite this technicality, Plaintiff alleges that the application was completed and mailed to JPMC in October 2018 and that JPMC's response letter was dated October 29, 2018. And, although JPMC requested a profit and

-14-

loss statement for the most recent three-month period only, Plaintiff alleges that, because he provided JPMC with a profit and loss statement for the entire year, JPMC already had more information that it required. *Cf. Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x. 355, 359 (5th Cir. March 21, 2016) (affirming dismissal of a RESPA claim after noting that "Gresham did not plead, nor is there any evidence that he submitted a complete loss mitigation application more than 37 days before the [ ] foreclosure sale").

Here, JPMC's entire argument hinges on the determination of whether the October 2018 loss mitigation application was complete. As alleged in Plaintiff's Petition, and for the reasons stated above, at this pleading stage, Plaintiff has stated plausible claims for violations of the RESPA, and those claims should not be dismissed.

II.     Plaintiff's TDCA claim should not be dismissed.

Plaintiff alleges that JPMC violated Section 392.301(a)(8) of the Texas Debt Collection Practices Act, which provides that '[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Plaintiff alleges that JPMC violated Section 329.301(a)(8) by noticing a foreclosure sale despite Plaintiff's pending loss mitigation application and review. *See* Dkt. No. 1-1 at ¶¶44, 45. Plaintiff contends that this amounted to dual tracking, which is prohibited by law. *See id.* at ¶ 45.

Because JPMC asserts that "[t]he sole basis for Plaintiff's TDCA cause of action is his erroneous contention that JPMC violated the so-called 'dual tracking' prohibition

contained in section 1024.41(g) of the RESPA," Dkt. No. 6 at ¶ 27, and because the undersigned concludes that Plaintiff has stated a dual tracking claim at this pleading stage, Plaintiff's TDCA claim should not be dismissed.

III.   Plaintiff's claim for injunctive relief should not be dismissed.

Plaintiff seeks injunctive relief under the TDCA. *See* Dkt. No. 1-1 at ¶ 50; TEX. FIN. CODE § 392.403(A)(1).

"Under Texas law, a request for injunctive relief 'is not in and of itself a cause of action, but instead necessarily depends on an underlying cause of action.' " *Grace v. Everhome Mortg. Co.*, No. 3:13-cv-4563-B, 2015 WL 5146678, at *6 (N.D. Tex. Sept. 2, 2015) (citing *Wildy v. Wells Fargo Bank, NA*, No. 3:12-cv-1831-BF, 2013 WL 246860, at *6 (N.D. Tex. Jan. 21, 2013); *Cooks v. Wells Fargo Bank, N.A.*, No. 3:10-cv-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010)); *accord Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 n.15 (5th Cir. 2012) ("[A] request for injunctive relief absent an underlying cause of action is fatally defective.").

Because Plaintiff states a plausible claim to relief under the TDCA, the Court should deny JPMC's motion to dismiss Plaintiff's request for injunctive relief.

**Recommendation**

The Court should deny JPMorgan Chase Bank, N.A.'s Motion to Dismiss Under Rule 12(b)(6) [Dkt. No. 5].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 19, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE