IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRETT STACY,                          §
                                      §
        Plaintiff,                    §
                                      §
V.                                    §          No. 3:19-cv-446-M-BN
                                      §
JPMORGAN CHASE BANK, N.A.,            §
                                      §
        Defendant.                    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States Chief District Judge Barbara M.G. Lynn. *See* Dkt. No. 4.

Defendant JPMorgan Chase Bank, N.A. has filed a motion for summary judgment. *See* Dkt. No. 42. Plaintiff Brett Stacy has filed a response, *see* Dkt. No. 47, and JPMC has filed a reply, *see* Dkt. No. 56.

Stacy filed a Suggestion of Bankruptcy [Dkt. No. 57] reporting that, on January 6, 2020, he filed bankruptcy in the United States Bankruptcy Court for the Northern District of Texas in Case No. 20-40108-mxm13. But, as the parties both correctly agree in supplemental briefs, the automatic stay does not apply to this case and the claims brought by, and not against, Stacy here and the pending summary judgment motion

as to those claims. *See* Dkt. Nos. 59 & 60; *see, e.g.*, *Jorrie v. Bank of N.Y. Mellon Trust Co., N.A.*, 740 F. App'x 809, 812 & n.2 (5th Cir. 2018).

And, for the following reasons, the undersigned recommends that Court grant the motion for summary judgment.

## Background

Stacy purchased property located at 3209 Cornell Avenue in Dallas, Texas, on October 11, 2007. *See* Dkt. No. 1-1 at 26-27. He financed part of the purchase price with a first mortgage loan. He executed a note in the original principal amount of $1,320,000 and a deed of trust securing the property (collectively, the "loan"). *See* Dkt. No. 44 at 22-28, 29-43. JPMC is the servicer on the loan. *See id.* at 6 ¶ 11.

Stacy fell behind on the first mortgage in April 2018. *See id.* at ¶ 12. Stacy cured the default on June 25, 2018. *See id.* at ¶13. Shortly thereafter, Stacy fell behind on his first mortgage again. *See id.* at ¶14. Stacy has not made a mortgage payment on the first loan since July 31, 2018. *See id.* at 53 ¶10, 224-25. This lawsuit arises from his attempt to obtain mortgage assistance. *See id.* at 4-21.

Stacy submitted a loss mitigation application to JPMC on October 23, 2018. *See id.* at 77-80. JPMC received it on October 24, 2018. *See id.* at 52.

JPMC determined that the application was incomplete and, on October 29, 2018, informed Stacy that it needed additional information and documentation from him. *See id.* at 92-96. JPMC also requested the same information in two emails on

October 31, 2018, and January 8, 2019, *see id*. at 279-81, and in a telephone call with Stacy, *see* Dkt. No. 1-1 at 11 ¶ 16; Dkt. No. 49-1 at 3.

Stacy did not provide the information and documentation requested by JPMC by November 28, 2018, or by January 24, 2019 − nearly three months after JPMC's letter requesting it. *See id*. at 7-8 ¶¶ 17, 19, 52-53 ¶¶ 4, 6; Dkt. No. 49-1 at 3. On January 24, 2019, JPMC notified Stacy that it had canceled its review of the application "because we didn't receive all the documents we need." *Id*. at 53 ¶ 8, 113-14.

JPMC then scheduled a foreclosure sale for February 5, 2019. *See id*. at 8 ¶ 21.

Stacy sued JPMC to stop the foreclosure sale. Stacy asserted claims for violations of the Real Estate Settlement Procedure Act ("RESPA") and Texas Debt Collection Practices Act ("TDCA"). Both claims are based on the contention that JPMC was required to evaluate the loss mitigation application because it was complete or facially complete. *See* Dkt. No. 1-1 at 8-25.

On January 29, 2019, Plaintiff submitted a new loss mitigation application and profit and loss statement for the last three months. *See* Dkt. No. 44 at 8 ¶ 40. On August 7, 2019, JPMC offered Stacy a loan modification which would have reduced his monthly mortgage payment, *see id*. at 9 ¶9, 116-43, but Stacy did not accept the offer, *see id*. at 169-71, 181:23-183:10.

JPMC has not foreclosed and Stacy remains in possession of the property. *See* Dkt. No. 49-1 at 1.

JPMC now seeks summary judgment on both of Stacy's claims. *See* Dkt. No. 42. It argues that Stacy's loss mitigation application was neither complete nor facially incomplete and that, as a result, the requirement to evaluate loss mitigation options for Stacy was never triggered. *See* Dkt. No. 43. In response, Stacy argues that the October 23, 2018 application was facially complete, or, alternatively, that JPMC failed to exercise reasonable diligence in obtaining information and documents needed to make the application facially complete. *See* Dkt. Nos. 47, 48.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and

designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue

for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials –  including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

I.    The Court should grant summary judgment on the RESPA claims.

RESPA places various obligations on mortgage servicers when a borrower submits a loss mitigation application. *See generally* 12 C.F.R. § 1024.41 (Reg X). JPMC argues that it is entitled to summary judgment on Stacy's RESPA claims because Stacy failed to submit a complete loss mitigation application, which is necessary to trigger those obligations. In response, Stacy asserts that the loss mitigation application was facially complete as of the date it was submitted, which would trigger

the obligations to evaluate mortgage assistance options for him, or, alternatively, JPMC failed to exercise reasonable diligence in obtaining information and documents needed to make the application facially complete.

In his petition, Stacy alleges JPMC violated Sections 1024.41(c)(1), (d), (g), and (h) of RESPA. *See* Dkt. No. 1-1 at 12-17. Stacy alleges that JPMC violated 12 C.F.R. § 1024.41(c)(1) by "fail[ing] to evaluate Stacy for 'all' loss mitigation options and to provide Stacy a written response to the options Stacy would be offered, if any," *id.* at ¶¶ 34, 35; that JPMC violated 12 C.F.R. § 1024.41(d) because it "never provided a written notice to Plaintiff that he was denied for a trial or permanent loan modification or any reason for said denial," *id.* at ¶¶ 34, 35; that JPMC violated 12 C.F.R. §1024.41(g) by engaging in dual tracking by scheduling a non-judicial foreclosure sale of the property while simultaneously considering Stacy for loss mitigation options, *id.* at ¶¶ 28-31; and that JPMC violated 12 C.F.R. 1024.41(h) by failing to provide him with "the opportunity to appeal the denial of any loss mitigation request," *id.* at ¶ 36.

The duties imposed by Sections 1024.41(c)(1), (d), (g), and (h) are triggered only if a complete loss mitigation application is submitted or received in compliance with the applicable deadline prescribed by regulation. *See Good v. Prof-2013-s-13 Legal Title Trust IV by U.S. Bank Nat'l Assoc.*, No. 3:17-cv-2967-M-BN, 2019 WL 2617948, at *8 (N.D. Tex. May 16, 2019) (citing *Kaprantzas v. CitiMortgage, Inc.*, No. 3:17-cv-780-D, 2018 WL 4852875, at *3 (N.D. Tex. Oct. 5, 2018)). A "complete loss mitigation application" is defined as "an application in connection with which a

servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

The summary judgment evidence conclusively establishes – and Stacy does not now dispute – that the loss mitigation application was incomplete. But Stacy argues there are fact questions as to whether the loss mitigation application was facially complete so as to trigger JMPC's duty to review.

Stacy received a copy of JPMC's Mortgage Assistance Checklist from JPMC before he submitted a loss mitigation application. *See* Dkt. No. 44 at 238 (Request for Admission 2), 245 (Request for Admission 2), 82-83, 262-63. The Checklist states the borrower must complete the Request for Mortgage Assistance form. *See id.* at 82. It also instructs the borrower regarding the financial documents that must be provided, including self-employed borrowers like Stacy:

> COLLECT AND SEND COPIES OF YOUR FINANCIAL DOCUMENTS
> *Please note: Documents will not be returned.*
> …
> If you are self-employed or an independent contractor (if you have income reported on a Form 1099), send your most recent signed and dated quarterly or year-to-date Profit and Loss statement with company name and date. Send all statement pages, even if a page is blank. If you don't have a Profit and Loss statement, you can complete the Sample Profit and Loss Statement that is enclosed or available to download on chase.com/MortgageAssistance.

*Id.* And it emphasizes the requirements for completeness and accuracy:

"IMPORTANT To avoid delays, please make sure everything you send us is complete and accurate."

*Id.*

Stacy submitted a loss mitigation application to JPMC for the first mortgage loan on October 23, 2018. When a servicer receives an application 45 days prior to a foreclosure sale, the servicer is required to immediately ascertain whether the application is complete and notify the borrower of this determination, in writing, within 5 days. *See id.* § 1024.41(b)(2)(i).

Stacy did not complete several sections of required information in the Request for Mortgage Assistance form. He failed to mark either box to state whether his hardship was temporary or long term. *See* Dkt. No. 44 at 77. He failed to fill in any of the blanks for household assets, although he had assets in those categories. *See id.* at 78, 165-66 (102:7-13, 104:14-17). He failed to fill in the blanks to specify the number of people in the household or the number of vehicles. *See id.* at 78. He failed to fill in the blanks to identify other mortgages and liens associated with the property, although he has had at least one other mortgage on the property the entire time he has owned it. *See* Dkt. No. 1-1 at 10 ¶ 10; Dkt. No. 44 at 79, 164 (100:7-12); Dkt. No. 49-1 at 1-2. And he failed to fill in the date he signed the form certifying that all information was truthful as of that date. *See* Dkt. No. 44 at 80.

Stacy also failed to include a profit and loss statement with the necessary information. He submitted two profit and loss statements with the application: one

was on JPMC's Sample Profit and Loss Statement Form (the "First P&L") and the other was document titled "eCarLink, L.P. Profit and Loss through December 2016" (the "Second P&L"). *See id.* at 52-53 ¶6, 85-86, 88-90. Stacy failed to provide several pieces of required information in the First P&L. He failed to fill in the dates to show the time period covered. *See id.* at 85. He failed to fill in any expenses, although his business had those expenses. *See id.* at 85-86, 148-53 (45:21-50:8). He failed to fill in the net income and tax sections of the form. *See id.* at 86. And he failed to fill in the date he signed it certifying that the information was truthful as of that date. *See id.* The Second P&L was nearly two years old. In the application, Stacy certified that he sought mortgage assistance because "the landscape of business" changed on December 1, 2017, which caused his financial hardship. *See id.* at 77. Stacy submitted the application for mortgage assistance in October 2018, but the Second P&L covered only calendar year 2016. *See id.* at 88.

If a loss mitigation application is incomplete, the servicer must "exercise reasonable diligence in obtaining documents and information to" complete the application, notify the borrower, within 5 days, of "the additional documents and information the borrower must submit to make the loss mitigation application complete" and state "a reasonable date by which the borrower should submit the documents and information." 12 C.F.R. § 1024.41(b)(1), (b)(2)(i) and (ii).

Stacy's loss mitigation application was delivered to JPMC on October 24, 2018. *See* Dkt. No. 44 at 52. On October 29, 2018, JPMC sent Stacy a letter informing him that it needed additional information and documents. The letter identified several deficiencies with the application, including that (1) the Request for Mortgage Assistance form was not dated; (2) the profit and loss statement did not indicate the period of time it covered or did not cover the required three-month minimum period, and (3) the profit and loss statement was not clear, complete or had been altered. JPMC requested that Stacy "send an updated copy of the complete Request for Mortgage Assistance form" and "send an updated copy of the most recent quarterly or year to date Profit and Loss Statement, signed and dated, showing revenue, expenses, company name and period of time covered" and enclosed the forms to be completed. The letter stated that JMPC needed to receive the information by November 28, 2018 and cautioned him:

> If you are in default, your request for mortgage assistance may not stop the foreclosure process. Previously placed foreclosure protection may expire before the time frame allotted to provide missing documents listed above. Until we receive all of the information we need to evaluate your, file, we may not be able to extend additional foreclosure protection. Do not ignore any notices you receive.

*Id.* at 92-96. Stacy admitted that he received the October 29, 2018 letter. *See id.* at 238, 245, 277-78. He did not provide the additional information and documents.

Stacy nevertheless asserts that JPMC violated 12 C.F.R. §1024.41(b) by "failing … to treat Stacy's [October 2018 application] as facially complete when it was sent in

October 2018." Dkt. No. 1-1 at ¶ 27. When the application is rendered complete −
either in actuality or facially − more than 37 days before the foreclosure sale, the
evaluation procedures under Subsection (c) are triggered. *See id.* 12 C.F.R §
1024.41(c).

Stacy characterizes the requested missing information and documents as being
only a missing date on the Request for Mortgage Assistance form and a profit and loss
statement for one year instead of three months. But that does not accurately
characterize the evidence. JPMC required a completed application that was signed "to
certify that all the information is true" as of the date signed. It also required Stacy's
most-recent profit and loss statement for a minimum three-month period. The problem
with the profit and loss statement Stacy submitted was not that it was for a year but
rather that it was for the year 2016. It also was unclear, incomplete, or had been
altered.

Viewing the evidence in the light most favorable to Stacy, the application could
not have been considered facially complete. If the borrower fails to respond within the
reasonable time provided and the application remains incomplete, the servicer may,
at its discretion, evaluate the incomplete application but is not required to do so. *See*
12 C.F.R. § 1024.41(c)(2)(ii). On the other hand, if the borrower submits the requested
documents or no additional information is requested, the application is considered
"facially complete," a term commensurate with general "completeness" for the
purposes of triggering the servicer's evaluation obligations. *See id.* § 1024.41(c)(2)(iv).

-15-

Under the plain language of the statute, an incomplete application can never be considered facially complete. *See id.* § 1024.41(c)(2)(iv). Section 1024.41(c)(2) applies only when the borrower provides all the missing information and documents identified in the statutorily required notice and then the servicer identifies additional information or documents that are required to complete the application. *See id.* Here, JPMC requested missing documents and information in the October 29, 2018 letter, but Stacy never provided them. And, because Stacy failed to provide the information needed to complete the application, the application never became complete or facially complete and the duties imposed by Sections 1024.41(c)(1), (d), (g), and (h) were never triggered.

Alternatively, Stacy argues there are fact questions as to whether JPMC used reasonable diligence to attempt to obtain the missing documents and information needed to make the application complete. Stacy alleges that JPMC violated 12 C.F.R. §1024.41(b) by allegedly "failing to exercise reasonable diligence in working out Stacy's options," *see* Dkt. No. 1-1 at ¶ 27, and 12 C.F.R. § 1024.41(c)(2)(i) and (ii) by failing to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application, *see id.* at ¶ 37.

JPMC requested the missing documents and information in the October 29, 2018 letter and in emails on October 31, 2018 and January 8, 2019. *See* Dkt. No. 44 at 279-81.

JPMC had no other way to get the information. It had no way to know the date

on which Stacy signed the Request for Mortgage Assistance form certifying that all the information was truthful as of that date. JPMC repeatedly asked Stacy to resubmit the form with the date filled in, but he did not do so during the nearly three months that passed before JPMC finally cancelled its review of the application on January 24, 2019.

Likewise, JPMC had no other way to obtain a current and complete profit and loss statement for Stacy's business, Ecarlink, L.P. Stacy argues that the information needed to prepare a profit and loss statement for his business was not within his control because was unable to get another appointment with his accountant to prepare another profit and loss statement due to the holidays and end-of-year tax consulting. But the accountant's busy schedule does not mean the information was out of Stacy's control. *See* 12 C.F.R. § 1024.41(b)(1).

Stacy also argues that JPMC prevented him from being able to submit a current profit and loss statement for his business by failing to provide him with information that he had already submitted with the application so he could prepare a new profit and loss statement himself. JPMC had determined the information that he had previously submitted was insufficient, and Stacy had been warned before he submitted his application that documents would not be returned. And JPMC ultimately did provide Stacy with the information before it cancelled its review of the application. *See* Dkt. No. 49-1 at 3.

And Stacy argues that JPMC's thirty-day window to provide the missing

information and documents was not reasonable under the facts and circumstances. The summary judgment evidence shows that JPMC continued to work with Stacy to obtain the missing documents and information for almost two months after the November 28, 2018 deadline passed. The undersigned concludes that, under the facts and circumstances, there is no genuine dispute as to whether JPMC acted reasonably in trying to obtain the documents and information needed to make the application complete.

Viewing the evidence in the light most favorable to Stacy, the undersigned concludes JPMC complied with its obligations under RESPA or its duty to do so was never triggered because Stacy never submitted a complete or facially complete loss mitigation application. Accordingly, because there are no genuine disputes as to any material fact, the undersigned recommends that the Court grant summary judgment on the RESPA claims.

II.    The Court should grant summary judgment on the TDCA claim.

Stacy alleges that JPMC violated Section 392.301(a)(8) of the Texas Debt Collection Practices Act, which provides that "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Stacy alleges that JPMC violated Section 329.301(a)(8) by noticing a foreclosure sale despite Plaintiff's pending loss mitigation application and review. *See* Dkt. No. 1-1 at ¶¶44, 45.

The sole basis for Stacy's TDCA claim is his contention that JPMC violated RESPA"s "dual tracking" prohibition. *See id.* at ¶ 45; 12 C.F.R. § 1024.41(g). Section 1024.41(g) requires a complete loss mitigation application to trigger the prohibition on foreclosure sale and, as discussed above, Stacy's application was never complete or facially complete. Also, the application was submitted before the notice of foreclosure, JPMC did not file suit for a foreclosure judgment or order of sale, and JPMC did not foreclose on the secured property. And the new loss mitigation application submitted on January 29, 2019 did not trigger the dual tracking prohibition of Section 1024.41(g) because it was submitted less than 37 days before the scheduled foreclosure date of February 5, 2019.

Accordingly, the undersigned concludes JPMC did not violate Section 1204.41(g) as a matter of law and recommends that the Court grant summary judgment on the TDCA claim.

III.    <u>The Court should grant summary judgment on the claim for injunctive relief.</u>

Stacy seeks injunctive relief under the TDCA to permanently enjoin JPMC from foreclosing on the property. *See* Dkt. No. 1-1 at 19, ¶ 48, 60-64; TEX. FIN. CODE § 392.403(A)(1). "Under Texas law, a request for injunctive relief 'is not in and of itself a cause of action, but instead necessarily depends on an underlying cause of action.'" *Grace v. Everhome Mortg. Co.*, No. 3:13-cv-4563-B, 2015 WL 5146678, at *6 (N.D. Tex. Sept. 2, 2015) (citing *Wildy v. Wells Fargo Bank, NA*, No. 3:12-cv-1831-BF, 2013 WL

246860, at *6 (N.D. Tex. Jan. 21, 2013); *Cooks v. Wells Fargo Bank, N.A.*, No. 3:10-cv-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010)); *accord Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 n.15 (5th Cir. 2012) ("[A] request for injunctive relief absent an underlying cause of action is fatally defective."). Because JPMC is entitled to summary judgment on Stacy's TDCA claim, the court should also grant summary judgment for injunctive relief under that claim.

IV.    The Court should grant summary judgment on several damages claims.

JPMC seeks summary judgment on Stacy's damages claims based on alleged harm to his business, Ecarlink, L.P., and for wrongful credit reporting, time he spent working on loss mitigation applications, and clouding title and slander of title.

As an initial matter, Stacy is not entitled to damages because neither of his claims survive summary judgment. But, if they could, JPMC would be entitled to summary judgment on several of Stacy's damages claims.

JPMC argues Stacy cannot recover damages for alleged harm to Ecarlink, L.P. under either RESPA and TDCA because proximate cause is lacking between any damages suffered by Stacy and Ecarlink, L.P. *See Sutton v. Citimortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017) (proximate cause required under RESPA); *Williams v. Wells Fargo Bank, N.A.*, No. 4:18-cv-064-O, 2018 WL 6181649, at *4 (N.D. Tex. Nov. 27, 2018) (same); *Ledisco Fin. Servs, Inc. v. Viracola*, 533 S.W.2d 951, 956-57 (Tex. Civ. App.–Texarkana 1976, no writ) (proximate cause required under TDCA).

In response, Stacy points out that he did not plead for any damages to Ecarlink, L.P. but only for damages sustained in his individual capacity. These alleged damages stem from the denial of a line of credit for Ecarlink, L.P. by Nextgear. The Nextgear credit application shows Stacy as the only guarantor with 100% ownership in Ecarlink, L.P. *See* Dkt. No. 49-3 at 3. Stacy never applied apply for a line of credit on behalf of himself individually. *See* Dkt. No. 44 at 175, 177, 240. According to Stacy, Nextgear initially approved a $950,000 line of credit for Ecarlink, L.P in March 2019, but soon thereafter Nextgear denied the line of credit "due to derogatory reporting by Defendant." Dkt. No. 44 at 227, 240.

Ecarlink, L.P. is a Texas limited partnership, which makes it a separate legal entity from its partners. *See* Dkt. No. 49-3 at 4-7. TEX. BUS. ORGS. CODE § 154.001(a)-(c). As a result, Stacy cannot recover damages sustained by Earlink, L.P. Nor can Stacy "rest his claim to relief on the legal rights or interests of third parties." *Warth v. Sedlin*, 422 U.S. 490, 499 (1975); *Salomon v. Kroenke Sports & Ent., LLC*, No. 3:15-cv-666-M, 2015 WL 5737935, at *2 (N.D. Tex. Sept. 29, 2015); *Andrade v. NAACP of Austin*, 345 S.W. 3d 1, 16 (Tex. 2011). A partner to a limited partnership cannot complain of an injury incurred by, or wrong done to, the limited partnership. *See CLIP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 122-23 (2nd Cir. 2013); *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 221 (5th Cir. 1994).

Likewise, Stacy cannot recover damages for wrongful credit reporting. Stacy has not asserted a claim for violation of the Fair Credit Reporting Act. *See* Dkt. No. 1-1 at 8-25. And Stacy defaulted on his payments on the loan in April 2018, defaulted on his payments again after June 2018, and never made a payment on the loan after July 31, 2018, so JPMC could lawfully report accurate derogatory information concerning the loan to credit reporting agencies. *See* 15 U.S.C. § 1681(b). But Stacy does not identify or come forward with summary judgment evidence of any inaccurate or wrongful credit reporting by JPMC.

And, as discussed above, Stacy did not suffer any injury proximately caused by any credit reporting by JPMC and he lacks standing because he did not suffer the alleged injury. The only harm that Stacy contends that he suffered from JPMC's alleged wrongful credit reporting is the denial of the Nextgear line of credit, but Ecarlink, L.P., not Stacy, was the applicant for the line of credit.

Stacy also seeks damages for the time he spent working on the loan mitigation applications. A borrower cannot recover damages for time and money spent preparing loss mitigation applications in a suit against a mortgage servicer founded on violations of 12 C.F.R. § 1024.41. *See Williams v. Wells Fargo Bank, N.A.*, 4:18-cv-564-O, 2018 WL 6181649, at *4 (N.D. Tex. Nov. 27, 2018); *Ruiz v. PennyMac Loan Servs., LLC*, 3:18-cv-1544-D, 2018 WL 4772410, at *3 (N.D. Tex. Oct. 3, 2018). As Judge Fitzwater explained in *Ruiz*:

> But causation is the key. Any expenses [borrower] incurred prior to [mortgage servicer's] alleged violation – such as those involved in preparing and sending the loss mitigation application, or in following up on the application before the regulatory deadline – do not suffice, because it cannot be said that they were caused by [servicer's] noncompliance.

*Id.* Here, there is no causal connection between the amount of time Stacy spent working on loss mitigation applications and any Reg X violations by JPMC in dealing with the applications.

Finally, Stacy seeks damages for clouding title and slander of title. But Stacy did not plead a claim for slander of title or quiet title and, as a matter of law, cannot recover on a claim not in the complaint. *See* Dkt. No. 1-1 at 8-25; *Phase II Transp. Inc. v. Carolina Cas. Ins. Co.,* 228 F. Supp. 3d 999, 1008 (C.D. Cal. 2017). But, even if he could, he fails to come forward with any evidence of "a false and malicious statement made in disparagement of [his] title to property," which is an essential element of a slander of title claim. *Allen-Pieroni v. Pieroni*, 535 S.W.3d 887, 887 (Tex. 2017). And damages are not recoverable on a claim to remove a cloud on title. *See Ellis v. Waldrop*, 656 S.W. 902, 905 (Tex. 1983).

For all these reasons, the Court should grant summary judgment on Stacy's damages claims.

## Recommendation

The Court should grant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment [Dkt. No. 42] and dismiss Plaintiff Brett Stacy's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 19, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE